### ADSIT et al. v. CATSKILL ELECTRIC RY. CO.

(Supreme Court, Appellate Division, Third Department.   November 11, 1903.)

1. STREET RAILROADS—COLLISION—QUESTIONS FOR JURY.
    A street car line passed over a narrow bridge.   Plaintiff drove on the bridge about the time a car entered on the other end.   His horse became frightened.   The motorman did not slacken his speed until near the horse, which swerved across the track and was struck.   Held, that whether

the motorman exercised due care, and whether the car was stopped as quickly as it could have been after the danger of collision became apparent, were questions for the jury.

**2. SAME—MEASURE OF CARE.**

The measure of care to be exercised towards persons rightfully in a street by a street railroad company operating cars thereon is such reasonable care as an ordinarily prudent person would exercise under all the circumstances.

**3. SAME—STOPPING CAR—ERROR OF JUDGMENT.**

Where a motorman using ordinary prudence erred in a matter of judgment as to stopping the car in time, or as to the method of stopping it, it was not negligence for which plaintiff can recover in an action for injuries by collision.

**4. SAME.**

A motorman is not required to take any precaution against frightening a horse on a highway, more than would be required by the driver of any other vehicle.

Appeal from Trial Term, Greene County.

Action by Wallace M. Adsit and another, as administrators, etc., of Lewis G. Adsit, deceased, against the Catskill Electric Railway Company. From a judgment for plaintiffs and an order denying its motion for a new trial on the minutes, defendant appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Arthur M. Murphy, for appellant.

Pierre S. Jennings, for respondents.

CHASE, J. This action was brought by the plaintiffs' intestate in his lifetime to recover damages for injuries to a horse owned by him. Defendant is a street surface railroad corporation engaged in the transportation of passengers by trolley cars. On the 6th day of February, 1902, the intestate drove a horse attached to a sleigh upon the northerly end of a highway bridge which consists of three spans, aggregating 437 feet in length, just before or about the time that one of defendant's cars came upon the southerly end of said bridge. The bridge is a narrow one. The tracks of the defendant's railroad are on the easterly side of said bridge, leaving, when a car is on the tracks, only about 8½ feet between the car and the westerly side of said bridge. The intestate's horse was walking, and the trolley car was going from 4 to 12 miles an hour. The horse commenced to prance, and showed evidences of fright, when the distance between the intestate and the car was about 300 feet, and the intestate testified that he then raised his hand as a signal to the motorman to "slow down" his car, and that at the time he did so the motorman was looking at him. Defendant's motorman testified that, if the intestate had raised his hand, he would have seen it; but denied that he raised his hand. A little later the horse swerved around across the defendant's tracks and at such time the defendant's car was from 20 to 40 feet away from the horse. The speed of the car had not been slackened prior to that time. The evidence relating to the motorman, and as to whether he was attentive to his duties from the time the signal is claimed to have been given until a time subsequent to the horse swerving across the tracks, is contradictory. The intestate shouted

to the motorman when the horse was across the tracks, and some effort was then made by the motorman to slow and stop the car; but the car struck the horse, shoving him from the tracks, and so injured him that he had to be killed. The car did not stop until it had passed five or more feet beyond the horse. One of the plaintiff's witnesses testified that the place where the accident occurred is an easy place to stop a car, and that he could stop a car going at the rate of 8 miles an hour in 14 feet, and such testimony is not directly contradicted. The defendant takes so large a part of the width of the bridge for its tracks and cars, and leaves so narrow a roadway for persons rightfully using the bridge with horses and vehicles, that it is its duty in running cars thereon to have them under control. In this case the motorman knew that the intestate was approaching him on the bridge with a horse and sleigh, and the exercise of reasonable care on his part under the admitted circumstances required that he should be watchful and observant, and that he should so regulate the speed of his car, and so have at his command the appliances for stopping the car, that no unnecessary delay would occur in case of sudden emergency. Omission to use the degree of care which the circumstances require is negligence. The evidence clearly presents a question of fact as to whether the motorman used that degree of care which the circumstances required, and also as to whether the car was stopped as quickly as it should have been stopped, with the exercise of such care, when the danger of a collision had become apparent. We cannot say that the verdict of the jury in favor of the plaintiffs was so against the weight of evidence that a new trial should be granted.

More serious questions arise in regard to the charge of the court. The court seems to have been in some confusion in regard to the degree of care required of the defendant, and the counsel for the plaintiffs unwisely insisted upon and obtained an assent to certain propositions, which, if considered apart from other statements made by the court to the jury may have been erroneous. The measure of care to be exercised towards persons rightfully in a street or highway by corporations running trolley cars thereon is such reasonable care as an ordinarily prudent person would exercise under all the circumstances. The last expressions of the court to the jury were not harmful to the defendant, and we quote therefrom:

"Defendant's Counsel: If the motorman, using ordinary prudence, erred in a matter of judgment as to getting the car stopped in time, or as to the method of stopping it, it was not negligence for which the plaintiff can recover. The Court: I have already charged that. Defendant's Counsel: The motorman on the car was not required to take any precaution against frightening the plaintiff's horse, more than would be required by the driver of any other vehicle. The Court: I will charge that. * * * Defendant's Counsel: He was not required to exercise any greater care towards the plaintiff in stopping and controlling his car than would the driver of a load of hay, if the load of hay frightened the horse. The Court: I will say the motorman should observe the same care that the driver of any other vehicle should observe, as far as the traveling public is concerned. * * * Defendant's Counsel: I also ask your honor to charge that there is no evidence in this case that the motorman saw Mr. Adsit raise his hand when he first came on the bridge. The Court: I will leave that for the jury to say. Defendant's Counsel: Defendant excepts to that portion of your honor's charge in which you say to the jury that the defendant should have used such care as was

necessary to run their cars without endangering the rights of the other public, and also to that portion of your honor's charge in which you say to the jury that it is the duty of the person in charge of the car to operate it in such a manner as to avoid an accident. The Court: I didn't charge it in that language—that restricted way. I stated they were to run it in such a manner as a prudent person would run for the purpose of avoiding an accident, but not that they were obliged to run it so as to avoid an accident."

In view of the statements of the court made to the jury immediately before they retired for their deliberations, they could not have been confused by any previous expressions relating to necessary or utmost care. This case has been twice tried, and the jury in each case has found in favor of the plaintiffs, and we think the judgment should be affirmed.

Judgment affirmed, with costs. All concur.